UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANYA SMITH,

        Plaintiff,

    v.

INTERNATIONAL BUSINESS
MACHINES CORP.,

        Defendant.

CIVIL ACTION NO.
1:21-CV-03856-JPB

**ORDER**

    This matter comes before the Court on Tanya Smith's ("Plaintiff") Amended Motion to Vacate Arbitration Award [Doc. 18] and International Business Machines Corporation's ("IBM" or "Defendant") Motion to Confirm Arbitration Award [Doc. 24].  This Court finds as follows:

**BACKGROUND**

    Plaintiff was an employee for Defendant from 1988 until 2020.  [Doc. 18, p. 4].  On May 21, 2020, Plaintiff received notice that her employment would be terminated pursuant to a reduction in force, which Defendant refers to as a "resource action."  [Doc. 23, p. 3].  Plaintiff continued to work for Defendant until June 2020.  [Doc. 18, p. 2].

Upon her termination, Plaintiff signed a Resource Action Separation Agreement (the "Agreement") in exchange for payments and benefits.  [Doc. 23, p. 4].  By signing the Agreement, Plaintiff released certain claims and agreed that any claims she did not release would be submitted to arbitration.  [Doc. 18-2, p. 24].  The Agreement did not release claims under the Federal Age Discrimination in Employment Act (the "ADEA").  Id. at 25.  Under the terms of the Agreement, ADEA claims "will be resolved on an individual basis by private, confidential, final and binding arbitration."  Id. at 26.  The Agreement further provides that such arbitration will proceed "under the auspices of JAMS" and according to Defendant's Arbitration Procedures, which the Agreement incorporates by reference.  Id.

Several of the Agreement's terms governing the arbitration of claims merit review.  Pursuant to the Agreement, a claimant seeking to initiate arbitration must do so by "submit[ting] a written demand for arbitration to [Defendant's] Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim."[1]  Id. at 29.  The Agreement specifies that "[t]he written demand for arbitration shall be submitted to

_____

[1] The ADEA provides 180 days for filing a claim.  42 U.S.C. § 2000e-5(e)(1).  Because Plaintiff received notice of her termination on May 21, 2020, she had 180 days from that date—i.e., November 17, 2020—to initiate arbitration.

the IBM Arbitration Coordinator, IBM Corporate Litigation, North Castle Drive, Armonk, New York 10504." Id. at 30.  Failing to timely file the demand results in waiver of the claim.  Id. at 29 ("If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived.").  Furthermore, filing "a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration." Id.  The Agreement provides that an arbitrator "is authorized to award any party the full remedies that would be available to such party if the [claim] had been filed in a court of competent jurisdiction." Id.  The Agreement permits the parties to file a motion for reconsideration within twenty days after the arbitrator's decision, at which time the arbitrator "shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties." Id.  Lastly, either party to the Agreement may bring an action in court to enforce an arbitration award.  See id.

On November 17, 2020, Plaintiff filed an arbitration demand with JAMS. [Doc. 18, p. 2].  The next day, on November 18, 2020, Plaintiff mailed a written demand for arbitration to Defendant's Arbitration Coordinator.[2] Id. at 3.  On April

---

[2] According to Plaintiff, the delay in mailing the demand to Defendant was due to "logistical issues posed by the COVID-19 pandemic and Plaintiff's Counsel operating entirely remotely."  [Doc. 18, p. 3].

16, 2021, Defendant moved to dismiss Plaintiff's arbitration demand as untimely. [Doc. 18-14].  The Arbitrator granted the motion to dismiss on May 6, 2021, concluding that Plaintiff waived her claim by failing to abide by the terms of the Agreement—specifically, that she did not submit a written demand to the Arbitration Coordinator until the day *after* the filing deadline for her claim.  [Doc. 18-8, p. 4].

Plaintiff filed a motion for reconsideration on May 20, 2021.  [Doc. 18-10]. On May 21, 2021, the Arbitrator issued an order stating that he lacked authority "to make substantive changes to an award that has ended a case" and directed Plaintiff to seek relief in court.  [Doc. 18-11, p. 2].  On June 21, 2021, after briefing by both parties on the motion for reconsideration, the Arbitrator entered an amended order[3] denying the motion for the same reasons set forth in the order granting Defendant's motion to dismiss and in Defendant's brief opposing the motion for reconsideration.  [Doc. 18-12, p. 2].  The Arbitrator also noted that "[t]o the extent [Plaintiff] has raised any new issues that could have been raised before, the [motion for reconsideration] is not the proper place for them to be raised."  Id.

---

[3] The Arbitrator explained that the JAMS legal department "concluded that [the Agreement] allowed a motion for reconsideration to be decided."  [Doc. 18-12, p. 2].

On September 17, 2021, Plaintiff commenced this action by filing a Petition and a Motion to Vacate Arbitration Award.  [Doc. 1]; [Doc. 1-1].  She then filed an Amended Petition and an Amended Motion to Vacate Arbitration Award on November 22, 2021.  [Doc. 19]; [Doc. 18].  Defendant filed a Motion to Confirm Arbitration Award on December 13, 2021.  [Doc. 24].

## ANALYSIS

### A.    Legal Standard

Under the Federal Arbitration Act (the "FAA"), a party may file a motion to confirm an arbitration award, which the court must grant unless the award is vacated, modified or corrected.  9 U.S.C. § 9.  The FAA establishes a strong presumption that arbitration awards will be confirmed.  Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1288 (11th Cir. 2002).  Accordingly, "'federal courts should defer to an arbitrator's decision whenever possible.'"  Johnson v. Directory Assistants Inc., 797 F.3d 1294, 1299 (11th Cir. 2015) (quoting Frazier v. CitiFinancial Corp., 604 F.3d 1313, 1321 (11th Cir. 2010)).

The FAA identifies four circumstances in which a court may vacate an arbitration award:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  These categories are the exclusive grounds for which a party may seek vacatur.  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 586 (2008).  As such, "a court's confirmation of an arbitration award is usually routine or summary."  Riccard, 307 F.3d at 1288; see also Gherardi v. Citigroup Glob. Mkts., Inc., 975 F.3d 1232, 1236 (11th Cir. 2020) ("Vacatur is allowed 'only in very unusual circumstances,' and those 'very unusual circumstances' are described in the [FAA]." (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995))).  In the same vein, "[j]udicial review of arbitration decisions is 'among the narrowest known to the law.'"  Gherardi, 975 F.3d at 1237 (quoting Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1286 (11th Cir. 2017)).  The party moving to vacate the award bears the burden of proving that one of the four bases in § 10(a) justifies vacatur.  Riccard, 307 F.3d at 1289.  This is a "heavy burden."  Floridians for Solar Choice, Inc. v. PCI Consultants, Inc., 314 F. Supp. 3d 1346, 1354 (S.D. Fla. June 8, 2018).

**B.**    **Plaintiff's Arguments for Vacatur**

Plaintiff contends that the Arbitrator's order granting Defendant's motion to dismiss should be vacated under § 10(a)(3) or § 10(a)(4).  Alternatively, Plaintiff argues that the provision in the Agreement related to the time for filing claims is unenforceable.  The Court will consider each argument in turn.

1.    *Vacatur Under § 10(a)(3)*

An arbitration award may be vacated under § 10(a)(3) "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  The arbitrator's refusal to consider evidence must "'prejudice[] the rights of the parties to the arbitration proceedings'" to be a basis for vacatur. Rosensweig v. Morgan Stanley & Co., 494 F.3d 1328, 1333 (11th Cir. 2007) (quoting Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985)).  The Court's task on a § 10(a)(3) claim is to determine "whether there was any reasonable basis for [the arbitrator's] decision."  Id.

Plaintiff argues that the Arbitrator ignored factual evidence related to her claim.  First, she contends that the Arbitrator did not properly consider her November 17, 2020 filing with JAMS.  This is untrue.  The Arbitrator expressly noted that "[w]hile [Plaintiff] filed a demand for arbitration with JAMS on the last

day of the time allowed, she concedes that the demand was not mailed to [Defendant] until the next day." [Doc. 18-8, p. 3]. Although the Arbitrator concluded that Plaintiff "managed to timely file a demand with JAMS," he subsequently determined that doing so was not sufficient to initiate arbitration under the terms of the Agreement. Id. at 4–5; see also id. at 5 ("The requirement of timely mailing a demand to [Defendant] in order to preserve a claim is fundamental to the purpose of the [A]greement."). Therefore, contrary to Plaintiff's assertion, the Arbitrator did consider her JAMS filing; he simply found that it did not satisfy the Agreement's requirements for initiating arbitration. Plaintiff appears to disagree with this conclusion, but that is not grounds for vacating the award. Johnson, 797 F.3d at 1301 ("[A] mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under [§] 10(a)(3)." (first alteration in original) (quoting Scott v. Prudential Secs., Inc., 141 F.3d 1007, 1016 (11th Cir. 1998))).

Plaintiff next claims that the Arbitrator failed to consider evidence about the circumstances created by COVID-19. The Arbitrator's order on the motion to dismiss belies this claim. In that order, he reasoned that "the fact that [Plaintiff] managed to timely file a demand with JAMS demonstrates that pandemic

8

restrictions were not the problem." [Doc. 18-8, pp. 4–5]. Plaintiff characterizes this statement as a reference "in passing" and claims that the Arbitrator dismissed the facts related to COVID-19 "out of hand." [Doc. 18, p. 9]. Even Plaintiff's own motion, then, shows that the Arbitrator *did* consider evidence related to COVID-19; he merely determined that those facts did not change his decision.[4] Plaintiff's argument is founded on a disagreement with the Arbitrator's conclusion—i.e., that pandemic-related challenges did not excuse the late filing—rather than the proposition that he did not consider material evidence. But again, disagreeing with an arbitrator's conclusion is not a basis for vacatur. Johnson, 797 F.3d at 1301.

Finally, Plaintiff alleges that the Arbitrator did not assess "the stark contrast between [Defendant's] mailing requirement and the prevailing standard for conducting business electronically." [Doc. 18, p. 11]. The Arbitrator was not obliged to do so; rather, his duty was to enforce the terms of the Agreement

---

[4] Citing Schmidt v. Finberg, 942 F.2d 1571, 1575 (11th Cir. 1991), Plaintiff argues that "she did not agree to accept the uncertainty of a global pandemic that precluded in-person interactions." [Doc. 27, p. 3]; see Schmidt, 942 F.2d at 1575 ("'When the parties agreed to submit to arbitration, they also agreed to accept whatever reasonable uncertainties might arise from the process.'" (quoting Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 1410, 1413 (11th Cir. 1990))). Plaintiff omits the context of this holding. In Schmidt, 942 F.2d at 1575, and in Raiford, 903 F.2d at 1413, the Eleventh Circuit Court of Appeals explained that arbitrators are not required to explain their awards. As such, receiving a summary award is a "reasonable uncertaint[y]" that is part and parcel of the arbitration process. To the extent that Plaintiff contests the sufficiency of the Arbitrator's discussion of COVID-19, Schmidt and Raiford do not help her.

between the parties.  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 (2010) ("[T]he task of an arbitrator is to interpret and enforce a contract, not to make public policy."); Gherardi, 975 F.3d at 1237 ("Arbitration agreements are contracts where the bargain is for the arbitrator's construction of the underlying agreements, rather than for any particular outcome.").  Accordingly, Plaintiff has not met her burden of showing that the award should be vacated under § 10(a)(3).

2.    *Vacatur Under § 10(a)(4)*

Section 10(a)(4) permits vacatur "where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  This provision treats arbitration decisions with "extraordinary deference."  S. Commc'ns Servs., Inc. v. Thomas, 720 F.3d 1352, 1359 (11th Cir. 2013).  The "sole question" in a § 10(a)(4) claim is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether she got its meaning right or wrong."  Gherardi, 975 F.3d at 1238 (quoting Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc., 837 F.3d 1083, 1088 (11th Cir. 2016)).  "It is not enough" for a party to show that the arbitrator "committed an error—or even a serious error."  Stolt-Nielsen, 559 U.S. at 671. Because "arbitrators derive their powers from the parties' agreement," however, they "may exceed their power within the meaning of § 10(a)(4) if they fail to

comply with mutually agreed-upon contractual provisions in an agreement to arbitrate." Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 843 (11th Cir. 2011).

Plaintiff contends that the Arbitrator exceeded his authority by failing to grant Plaintiff the remedies that would be available in court and by issuing an allegedly summary denial of her motion for reconsideration. As to the first issue, Plaintiff emphasizes that the Agreement permits an arbitrator "to award any party the full remedies that would be available . . . in a court of competent jurisdiction." [Doc. 18-2, p. 29]. Plaintiff argues that the Arbitrator did not accord her these "full remedies," and thus failed to comply with the Agreement's terms, by declining to apply equitable tolling.[5]  See [Doc. 18, p. 13] ("The [A]rbitrator's manifest failure to apply the equitable tolling doctrine . . . contravened the terms of the [Agreement] and improperly deprived Plaintiff of the remedies that would be available to her in a court of law."). Under the doctrine of equitable tolling, a

---

[5] In the motion for reconsideration, Plaintiff argued that the arbitrator should have applied equitable modification, too. See [Doc. 18-10, pp. 6–7]. However, she did not raise this issue in opposition to Defendant's motion to dismiss, and she may not present new arguments in a motion for reconsideration. Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010) ("A motion for reconsideration cannot be used 'to . . . raise argument or present evidence that could have been raised prior to the entry of judgment.'" (quoting Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005))). As such, the Court will not address this point further.

plaintiff may sue after the expiration of the statute of limitations if "inequitable circumstances" prevented the plaintiff from timely filing suit.  Bryant v. Mortg. Cap. Res. Corp., 197 F. Supp. 2d 1357, 1367 (N.D. Ga. 2002).  Plaintiff claims that this doctrine "is frequently applied in discrimination cases" and seems to argue that, had she filed her claim in court, equitable tolling would excuse her late filing. Plaintiff cites Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982), to support her contention that the equitable tolling doctrine should apply to her situation.  In Zipes, the United States Supreme Court held that timely filing a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") was not a jurisdictional prerequisite to suit and instead was "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  Id.  Filing a charge with the EEOC is not a prerequisite to arbitration under the Agreement here, though.  See [Doc. 18-2, p. 29] ("The filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration.").  Therefore, equitably tolling the filing of an EEOC charge is inapposite to the case at hand, and Plaintiff does not explain why this doctrine otherwise applies to somehow toll the time

period in which she was required to file an arbitration demand.[6]  Accordingly, the

Arbitrator did not err by declining to apply equitable tolling to Plaintiff's case.

Plaintiff's second § 10(a)(4) argument is that the Arbitrator exceeded his

authority by summarily denying her motion for reconsideration.[7]  She claims that

he failed to follow the terms of the Agreement, which provide that the Arbitrator

"shall reconsider the issues raised" in a motion for reconsideration.  [Doc. 18-2, p.

29].  According to Plaintiff, the Arbitrator "failed to give any reasons for rejecting

Plaintiff's several detailed and well-reasoned arguments in support of allowing her

---

[6] In the Reply to the Motion to Vacate, Plaintiff argues that Defendant "fails to bring to the Court's attention that the Eleventh Circuit has held that if the plaintiff can show that a delay was 'through no fault of his own' then the time limitation can be extended."  [Doc. 27, p. 5] (quoting Robbins v. Vonage Bus., Inc., 819 F. App'x 863, 867 (11th Cir. 2020)). Plaintiff's representation of the Eleventh Circuit's holding in Robbins is misleading. Robbins explained that to bring suit under the Americans with Disabilities Act (the "ADA"), a plaintiff must first exhaust her administrative remedies by filing a charge with the EEOC.  819 F. App'x at 866. The plaintiff then has ninety days from her receipt of the EEOC's determination to file suit; if the date of receipt is disputed, it is presumed to be three days following the EEOC's mailing.  Id.  However, the plaintiff can avoid this presumption by showing "that receipt of the notice was delayed 'through no fault of his own.'"  Id. (quoting Lewis v. Conners Steel Co., 673 F.2d 1240, 1243 (11th Cir. 1982)). This principle—articulated in the context of ADA claims in court—does not support the proposition that COVID-19, while certainly not Plaintiff's fault, somehow excuses her late filing of an arbitration demand for an ADEA claim.

[7] As noted earlier, the Arbitrator initially ruled that he could not consider Plaintiff's motion for reconsideration.  See [Doc. 18-11].  Plaintiff contends that the Arbitrator exceeded his authority "by initially ignor[ing] the [Agreement's] clear language providing for motions for reconsideration."  [Doc. 18, p. 14].  The Arbitrator subsequently addressed Plaintiff's motion for reconsideration on the merits, rendering moot her argument as to the insufficiency of the initial order.

claim to move forward." [Doc. 18, p. 14]. First, Plaintiff's assertion is unsupported by the record. In the amended order on the motion for reconsideration, the Arbitrator specifically incorporated the reasons set forth in the order granting Defendant's motion to dismiss, as well as those presented in Defendant's opposition to the motion for reconsideration. See [Doc. 18-12, p. 2]. The Arbitrator did, then—albeit by reference—provide reasons for rejecting Plaintiff's arguments.

Second, even if the Arbitrator issued a truly summary denial, he would be within his right to do so. An arbitrator is not generally required to explain his decision, unless the governing agreement dictates that he will provide findings of fact and conclusions of law. Cat Charter, 646 F.3d at 844. The Agreement here simply provides that the arbitrator "shall reconsider the issues raised by the motion and, promptly, either confirm or change the decision, which (except as provided by law) shall then be final and conclusive upon the parties." [Doc. 18-2, p. 29]. On these terms, the Arbitrator's amended order denying the motion for reconsideration was plainly sufficient. Plaintiff's § 10(a)(4) argument that the Arbitrator exceeded his authority by summarily denying her motion for reconsideration is without merit.

3.      *Purported "Waiver" of Piggybacking Rule*

Plaintiff's final contention is that the Agreement's provision setting a time limit for initiating arbitration is unenforceable.  Specifically, she urges the Court to "declare [that] the provision in [the Agreement] that purports to waive the piggybacking rule is unenforceable and void."  [Doc. 18, p. 15].  The "piggybacking rule" (also referred to as the "single-filing rule") pertains to the requirement that a plaintiff bringing a discrimination claim must exhaust her administrative remedies before the EEOC prior to filing a claim in court.  See, e.g., Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 450 (11th Cir. 1993). More precisely,

> an employee who wishes to sue his employer for age discrimination must first file an administrative charge of discrimination with the EEOC.  Under the piggybacking rule, however, a putative plaintiff who has not filed his own EEOC charge may "piggyback" his claim onto the claim of a plaintiff who has filed a timely charge.

Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1101 (11th Cir. 1996)).

As a preliminary matter, Plaintiff did not contend that her argument about supposedly waiving the piggybacking rule falls under any one of § 10(a)'s "exclusive" grounds for vacating an arbitration award.  Hall St. Assocs., 552 U.S. at 584; see also Gherardi, 975 F.3d at 1236 n.3 (recognizing that "non-statutory,"

"judicially-created" grounds for vacatur violate the FAA).  This alone shows that

Plaintiff failed to carry her burden with regard to this particular argument for

vacatur.  Riccard, 307 F.3d at 1289 ("The burden is on the party requesting vacatur

of the award to prove one of [§ 10(a)'s] four bases."); Marshall & Co. v. Duke, 941

F. Supp. 1207, 1210 (N.D. Ga. 1995) ("[T]he party seeking vacatur bears the

burden of setting forth sufficient grounds to vacate the award in his moving papers

at the outset."), aff'd, 114 F.3d 188 (11th Cir. 1997).

Moreover, it is unclear whether the piggybacking rule would apply to a late-

filed demand for arbitration.[8]  Plaintiff did not cite, and the Court is unaware of,

any law in this district or this circuit addressing the situation.  The closest case on

---

[8] Plaintiff's argument seemingly rests on the principle that a party to arbitration must be able to "effectively . . . vindicate [her] statutory cause of action in the arbitral forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). She thus contends that denying her the use of the single-filing rule is tantamount to denying her a substantive right under the ADEA.  Plaintiff offers no binding legal authority for the proposition that the statute's filing deadlines are somehow substantive in nature; she cites only cases from the Sixth Circuit Court of Appeals that, notably, do not concern arbitration or the FAA.  See, e.g., Thompson v. Fresh Prods., LLC, 985 F.3d 509, 521 (6th Cir. 2021) (holding that "the limitations period[] in the . . . ADEA give[s] rise to substantive, non-waivable rights").  Yet this Court is not bound by precedent from the Sixth Circuit.  According to Plaintiff, "it seems apparent that the Eleventh Circuit would agree with the Sixth Circuit in Thompson," [Doc. 18, p. 23], but the Court declines to speculate on the hypothetical stance of the Eleventh Circuit.  In any case, it is *not* evident that the Eleventh Circuit would so agree.  See, e.g., Browning v. AT&T Paradyne, 120 F.3d 222, 225 (11th Cir. 1997) (describing the "ADEA limitations period" as "a procedural rather than substantive requirement").  Nonetheless, given the lack of binding legal authority on point and the existence of other grounds that dispose of this argument, the Court will not address it in any further detail.

point comes from the Southern District of New York, Rusis v. International Business Machines Corp., 529 F. Supp. 3d 178 (S.D.N.Y. 2021). In Rusis, former IBM employees brought a class action under the ADEA. Id. at 188. After the plaintiffs—who had not signed arbitration agreements—filed suit, several additional individuals who had signed arbitration agreements opted into the class. Id. at 190. IBM sought to compel arbitration for those additional individuals (the "Arbitration Opt-Ins"), who in turn argued that the court should first determine the enforceability of a provision in the arbitration agreement. Id. at 192. Specifically, the Arbitration Opt-Ins requested a ruling "that the provision in IBM's separation agreements setting the deadline for initiating arbitration [did] not prohibit the Arbitration Opt-Ins from piggybacking onto Named Plaintiffs' timely filed [EEOC] charges *in arbitration*, or, to the extent it does, a ruling that this provision is unenforceable."[9] Id. The Rusis plaintiffs set forth an argument that foreshadowed Plaintiff's position here, asking the court "to rule that the Arbitration Opt-Ins may proceed on their [ADEA] claims—in arbitration—pursuant to the piggybacking rule, despite filing arbitration demands after the deadline established in their separation agreements." Id. at 192 (alteration in original) (internal

---

[9] Notably, the contested provision and other language from the separation agreements in Rusis are essentially identical to those in the Agreement in this case.

quotation marks omitted).  The court determined that the class action waiver in the separation agreements signed by the Arbitration Opt-Ins precluded the requested ruling.  However, the court nonetheless "note[d] its skepticism of [p]laintiffs' arguments."  Id. at 192 n.4.  As the court explained, "[f]ormer employees who wished to pursue ADEA claims in arbitration pursuant to IBM's separation agreements were not required to file a charge of discrimination with the EEOC. Plainly, then, the piggybacking doctrine is wholly inapplicable in the arbitration context."  Id.  That reasoning is persuasive here.

Plaintiff further suggests that denying her the use of the piggybacking rule means that she "cannot pursue her ADEA claim *at all* in arbitration, even though[] absent the arbitration agreement, there is no question that she could pursue her claim in court by relying on the piggybacking rule."  [Doc. 18, p. 19].  Even if this were true, by agreeing to arbitrate this claim, Plaintiff "trade[d] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  Mitsubishi, 473 U.S. at 628.  Additionally, the Rusis plaintiffs raised a similar argument:  that IBM's motion to compel arbitration would preclude the Arbitration Opt-Ins "from pursuing their claims in any forum." 529 F. Supp. 3d at 194 n.8.  Describing this stance as "patently absurd," the court in Rusis observed that the plaintiffs

> conveniently ignore[d] that the simplest way in which the Arbitration
> Opt-Ins could have avoided this entire issue would have been to file
> timely arbitration demands in the first instance . . . .  Had the
> Arbitration Opt-Ins done so, there would be no need to resort to a (far-
> fetched) argument that the piggybacking doctrine saves their untimely
> demands . . . .  [T]he [c]ourt does not countenance [the p]laintiffs'
> attempts to set the fault at IBM's feet when they need look no further
> than their own counsel for the appropriate locus of blame.

Id.  This case is no different.  The simplest way for Plaintiff to vindicate her

ADEA claim was to file a timely demand for arbitration, which she did not do.  For

the reasons set forth above, the Court concludes that Plaintiff failed to carry her

burden with regard to vacating the award.

## CONCLUSION

Plaintiff's Amended Motion to Vacate Arbitration Award [Doc. 18] is

**DENIED**.  Defendant's Motion to Confirm Arbitration Award [Doc. 24] is

**GRANTED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 27th day of May, 2022.

J. P. BOULEE
United States District Judge